UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MAXUM INDEMNITY COMPANY                                            Plaintiff

v.                                            Civil Action No. 3:13-CV-00804-RGJ-RSE

BROKEN SPOKE BAR & GRILL, LLC, *ET AL*.                                 Defendants

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Maxum Indemnity Company's Motion for Summary Judgment. [DE 62]. Briefing is complete [DE 78, DE 79] and this matter is ripe. For the reasons below, the Court will **GRANT IN PART** and **DENY IN PART** Maxum Indemnity Company's Motion.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Maxum Indemnity Company ("Maxum") issued Defendant Chris Gribbins, doing business as Raywick Bar & Grill, a commercial insurance policy (the "Policy"). [DE 64-4 at 547]. Gribbins shot and killed David Litsey, Jr. outside the Raywick Bar & Grill (the "Incident"). [DE 64-2 at 515].

Defendant David Litsey, Sr. sued Gribbins, the Raywick Bar & Grill, and Defendant Broken Spoke LLC dba Raywick Bar & Grill ("Broken Spoke") in Kentucky court, alleging that Gribbins had either negligently or willfully caused Litsey, Jr.'s death (the "Kentucky Suit"). [[DE 64-1 at 511]. Maxum notified Gribbins that it would defend against the suit under a full reservation of rights and that it intended to seek a declaration of its rights the Policy. [DE 64-6 at 636–37].

Maxum then brought a declaratory action in this Court, seeking a declaration that the Policy did not cover the shooting of Litsey, Jr. and that Maxum need not defend or indemnify Gribbins

1

or Broken Spoke in the Kentucky Suit. [DE 1 at 2]. Maxum named Gribbins, Broken Spoke, and Litsey, Sr. as defendants in this suit. [*Id.* at 1].

A Kentucky jury later convicted Gribbins of the wanton murder of Litsey, Jr. *Gribbins v. Commonwealth*, 483 S.W.3d 370, 373 (Ky. 2016); *see also* [DE 64-3 at 545]. During Mr. Gribbins's criminal trial, the jury heard sworn testimony from several eyewitnesses to the shooting. Several witnesses testified that Gribbins confronted Litsey in a crowd outside the bar where Gribbins "pistol whipped" Litsey. [DE 64-2 at 516-17]. "During that assault, the gun discharged killing Litsey." [*Id.* at 516]. In his defense, Gribbins testified that Litsey confronted him outside the bar in an aggressive manner. [*Id.* at 517]. Gribbins stated that he drew his handgun to protect himself. [*Id.*]. He admitted that the gun was in his right hand when he placed his right hand on Litsey's chest. [*Id.*]. While the handgun was aimed at Litsey it discharged, killing him. [*Id.*]

After weighing all the testimony and physical evidence, the jury found Gribbins guilty of "Wanton Murder." The instructions provided to the jury on the elements of Intentional/ Wanton Murder stated:

> A. That on or about November 9, 2012, Gribbins killed David Litsey, Jr. by shooting him; and
>
> B. That in so doing, he was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of David Litsey, Jr. under circumstances manifesting an extreme indifference to human life; and
>
> C. He was not privileged to act in self-protection.

[DE 64-3 at 537].

The jury instructions defined "wantonly" as follows:

A person acts wantonly with respect to a result or to a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard

of conduct that a reasonable person would observe in the situation.

[DE 64-3 at 534].

The court also instructed the jury on the use of force in self-defense under Kentucky law and the jury found that Gribbins had not acted in self-defense. [DE 64-3 at 536]. Maxum now moves for summary judgment. [DE 62].

## II. JURISDICTION

Maxum brings this action under the Declaratory Judgment Act. [DE 1 at 2; 28 U.S.C. § 2201(a)]. While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). While neither party has addressed the Court's jurisdiction, the Court will first determine whether the exercise of jurisdiction is appropriate under the circumstances of this case.

This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is proper. *Grand Trunk W.R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). Although the Court must balance the five factors, the Sixth Circuit has never clarified the relative weights of the factors. *Id.* at 563.

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 18-5545, 2019 WL 3955847, at *6 (6th Cir. Aug. 22, 2019)

3

(citing *Flowers*, 513 F.3d at 557; *Bituminous*, 373 F.3d at 814; and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

There are two lines of cases in the Sixth Circuit. *United Specialty Ins. Co. v. Cole's Place, Inc.,* 2018 WL 1914731 at 4 (W.D. Ky. 2018) (citing *Flowers*, 513 F. 3d at 555). "One line of cases approved of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Id*. (quoting *Flowers*, 513 F.3d at 555).

This action falls into the first line of cases. Maxum asserts that (1) the Policy does not cover the Incident because Gribbins assaulted Litsey, Jr.; and (2) the Broken Spoke is not a named insured on the Policy, and therefore not covered by the Policy. [DE 64 at 495–505]. The first allegation requires determination of whether an assault occurred, which a Kentucky jury already definitively resolved in the underlying criminal matter. *Gribbins*, 483 S.W.3d at 373; *see also* [DE 64-2 at 517]. There are thus no fact-bound issues of state law awaiting resolution in the state-court litigation. *See Bituminous*, 373 F.3d at 813–14. The second allegation is a technical issue of law requiring no determination of disputed fact. As a result, this declaratory judgment action will "settle the controversy," as it resolves the dispute between the insurer and insured over who will pay for the state-court litigation. *See, e.g.*, *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760–61 (6th Cir. 2014). The first two *Grand Trunk* factors therefore support the exercise of jurisdiction.

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. The Sixth Circuit seldom finds procedural fencing if the declaratory-plaintiff filed after the start of litigation in state court. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 18-5545, 2019 WL

3955847, at *8 (6th Cir. Aug. 22, 2019). Maxum notified Gribbins, when it provided its reservation of rights, that it intended to seek a declaration of its rights the Policy. [DE 64-6 at 636–37]. There is no competing state court declaratory action. Thus, the third *Grand Trunk* factor is neutral.

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts" and is broken into three sub-factors. *Flowers*, at 559. The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Here, any factual determinations the Court may have to make will not overlap with those at issue in the State Court Action. To determine whether the Policy applies or whether the exclusions apply, the Court must survey the allegations in the underlying complaint and determine whether those allegations fall within the Policy or the cited exclusions. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) ("Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy."). All the factual issues necessary for resolution of this matter have been definitively determined in the state court criminal case. This issue is purely legal and does not require factual findings as any factual issues have already been resolved by the criminal matter. *See Cole's Place*, 2018 WL 1914731, at *7. Accordingly, this sub-factor supports exercising jurisdiction.

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id*. The Sixth Circuit has "found that 'issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers Indemnity Co. v*

*Bowling Green Prof. Assoc.*, 495 F.3d 266, 273 (6th Cir. 2007)). The questions that would arise here do not, however, do not involve novel issues of Kentucky law. *See Cole's Place, Inc.*, 2018 WL 1914731, at *8. The second sub-factor therefore counsels against exercising jurisdiction, even if less strongly than if the issues involved novel or unsettled questions of state law.

The third sub-part "focuses on whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Kentucky state courts are "more familiar and, therefore, better able to resolve" interpretation of insurance contracts. *Id*. Even when the state law is not difficult to apply, the Sixth Circuit has usually found "that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 2019 WL 3955847, at *10, citing *e.g.*, *Flowers*, 513 F.3d at 561 and *Travelers*, 495 F.3d at 273. Because this action involves an interpretation of a Kentucky insurance contract, the third sub-factor counsels against exercising jurisdiction.

The fifth and final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. Kentucky law provides a declaration of rights procedure, under KRS § 418.040. *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, No. 18-5267, 2018 WL 6787945, at *8 (6th Cir. Dec. 26, 2018). The Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*, 513 F.3d at 562. Specifically, "[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.*

On the other hand, "given that Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to resolve the issue" in this case. *Id.* This is because Maxum would have needed to join

6

the underlying state action and then wait until a resolution of liability before determining its obligations toward Defendants. "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* When faced with the same conflicting alternative remedies in *Flowers*, the Sixth Circuit held that this factor "counsel[s] against exercising jurisdiction . . . [h]owever, it does not counsel so strongly against exercising jurisdiction that" exercising jurisdiction would constitute an "abuse[ ] [of] discretion." *Id.* at 562–63. For these reasons, overall, the fifth *Grand Trunk* factor weighs against exercising jurisdiction.

As noted above, the Sixth Circuit has never suggested the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Cole's Place*, 2019 WL 3955847, at *5 (citing *Hoey*, 773 F.3d at 759). Further,"[t]he essential question is always whether [the court] has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id*. (citing *Hoey,* 773 F.3d at 759)(citation omitted). Having evaluated those factors, the first two factors support exercising jurisdiction, as does one of the sub-factors of the third factor. Because of the importance of these factors and the well-established law on these legal issues, the exercise of the Court's discretionary jurisdiction is appropriate.

### III. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences

7

are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## IV. DISCUSSION

Maxum makes two arguments in its Motion for Summary Judgment: (1) the Policy does not cover the Incident because Gribbins assaulted Litsey, Jr.; and (2) the Broken Spoke is not a named insured on the Policy, and therefore not covered by the Policy. [DE 64 at 495–505]. Gribbins counters that whether his actions were intentional is a factual question in dispute and that, because of representations made by Maxum's insurance agent, Maxum is estopped from denying coverage of the Incident. [DE 78 at 678–80].

### 1. Whether the Policy Covers the Incident.

The Policy only covers "'bodily injury' or 'property damage' [that] is caused by an 'occurrence' (the "Occurrence Requirement")." [DE 64-4 at 560]. The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id.* at 573]. The policy specifically excludes certain injuries, providing that "[t]his insurance does not apply to . . . '[b]odily injury . . . expected or intended from the standpoint of the insured" (the "Expected or Intended Injury Exclusion"). [*Id.* at 561].

The Policy also provides that "[t]his insurance does not apply to any claim or 'suit' for 'bodily injury' . . . and we shall have no obligation to indemnify or defend any insured for 'bodily injury' . . . resulting from, or caused in whole or in part by, assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation of any insured, his employees, patrons or any other persons" (the "Assault And/Or Battery Exclusion"). [DE 64–5 at 597].

Maxum argues that Gribbins's actions during the Incident were not "accidents" and therefore fall outside the Policy for failure to meet the Occurrence Requirement. Maxum also asserts that Gribbins intended or expected the injury to Litsey, Jr. and as a result, the Intended Injury Exclusion applies. Finally, Maxum alleges that Litsey, Jr.'s death resulted from an assault or battery by Gribbins and thus the Assault And/Or Battery Exclusion applies. [DE 64 at 495–502]. Further, Maxim argues that Gribbins's conviction for the wanton murder of Litsey, Jr. bars Gribbins from arguing that the above exclusions do not apply. [*Id.* at 502–04]. Gribbins disagrees and argues that it is Maxum is barred from arguing that the Incident does not fall under the Policy because Maxum's insurance agent told Gribbins that the Policy covered events like the Incident. [DE 78 at 697].

> *a.    Collateral Estoppel*

Gribbins argues that his shooting of Litsey, Jr. was "accidental," and he was lawfully using "reasonable force to defend his person and lawful property (money) from his establishment." [DE 78 at 680]. Maxum argues that because of Gribbins's wonton murder conviction, he is estopped from arguing that the shooting was accidental or justified by self-defense. [DE 64 at 496–97]. Gribbins counters that because his conviction is on appeal, collateral estoppel does not apply. [DE 78 at 678].

"Under Kentucky law, 'a criminal conviction may [in certain circumstances] be used for purposes of collateral estoppel in later civil proceedings.'" *Cox v. Holbert*, CIVIL ACTION NO. 3:14-CV-00637-CRS, 2016 WL 4146146, at *6 (W.D. Ky. Aug. 3, 2016) (alteration in original) (quoting *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. App. 1995)). "Estoppel is appropriate when a judgment in a former action estops re-litigation of those matter necessarily involved and decided in the previous action." *Id.* (citations omitted). And "the pendency of an appeal does not destroy the finality of the judgment for the purposes of issue preclusion under Kentucky or Sixth Circuit law." *Houchin v. Allstate Indem. Ins. Co.*, 2012 WL 2430474, Civil Action No. 4:07–CV–00071–M, at *3 (June 26, 2012) (citing *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997); *Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. App. 1991)).

A Kentucky jury convicted Gribbins of wanton murder. Gribbins's conviction is final and he has exhausted his direct appeals. *See Gribbins*, 483 S.W.3d at 378. Gribbins's conviction therefore estops him from asserting any facts inconsistent with the jury's finding in his criminal case.

> *b.    The Policy Requirements*

The jury convicted Gribbins under Jury Instruction No. 4, which read as follows:

A. [Gribbins] killed David Litsey, Jr. by shooting him.

AND

B. That in so doing:

1. He caused the death of David Litsey, Jr. intentionally.

OR

2. He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of David Litsey, Jr. under circumstances manifesting an extreme indifference to human life.

AND

C. He was not privilege [sic] to act in self-protection.[1]

[DE 64-3 at 537, 545].

Because Gribbins is estopped from asserting facts inconsistent with the criminal verdict, the question is whether that verdict is consistent with a finding that the Incident fulfills the Occasion Requirement and falls outside the Expected or Intended Injury and Assault And/Or Battery Exclusions.

i. The Occurrence Requirement

The Policy only applies to losses caused by an "occurrence," which the Policy defines as an "accident." [DE 64-4 at 560, 573]. "The words 'accident,' 'accidental,' and 'accidental means,' as used in insurance policies, have never acquired a technical meaning in law, and must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986). The

---

[1] This opinion refers to Gribbins's conviction as "wanton murder" both because the jury handwrote "wanton murder" on the verdict form, [DE 64-3 at 545], and because Maxum calls the conviction "wanton murder," [DE 64 at 488].

11

Kentucky Supreme Court has explained that the term "accident" refers to "an unfortunate consequence which befalls an actor through his inattention, carelessness or perhaps for no explicable reason at all" and that "a consequence which is a result of plan, design or intent is commonly understood as not accidental." *Id.* In holding that only intentional acts are non-accidental, the *Fryman* court made clear that if an insured "demonstrated a reckless disregard for an obvious danger," the resultant injury is an accident because the insured had not intended the injury. *Id.*

While an act only qualifies as an accident if the actor did not have the intent to cause the harm suffered, courts may infer an intent to cause a particular harm when the actor intentionally commits "an act 'certain to cause [that] particular kind of harm.'" *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 813 (Ky. App. 2000) (quoting *Walker v. Econ. Preferred Ins. Co.*, 909 S.W.2d 343, 345 (Ky. App. 1995)). Kentucky courts have held that "punching someone in the face supports [an] inference as a matter of law that [the insured] intended to injure" and that "a trial judge may infer intent to harm from the act of pointing and shooting a rifle at an infant at close range." *Id.* at 812–13.

Here, the jury instructions permitted a conviction if Gribbins "was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of David Litsey, Jr. under circumstances manifesting an extreme indifference to human life." [DE 64-3 at 537]. The jury instructions defined the term "wantonly" as "[a] person acts wantonly with respect to a result or to a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would overserve in the situation." [*Id.* at 534].

12

These instructions permit a conviction for wanton murder without a finding that the defendant intended the victim's death. *See Elliott v. Commonwealth*, 976 S.W.2d 416, 418 (Ky. 1998) (describing wanton murder as a specie of unintentional homicide). As the Kentucky Supreme Court put it when considering whether the jury had heard evidence sufficient to instruct on both wanton murder and intentional murder, the jury could have reasonably believed that by "using a loaded handgun[] as a club to beat Listey, Gribbins consciously disregarded a substantial and unjustifiable risk that the handgun might *accidently* be discharged." *Gribbins*, 483 S.W.3d at 376 (emphasis added).

Gribbins's conviction therefore does not estop him from arguing that Litsey, Jr.'s death was an accident. And while Gribbins's conviction might estop him from arguing that he did not intend to harm Litsey, Jr., whether the Incident was an occurrence under the policy turns on whether it was an accident. Maxum is therefore not entitled to summary judgment on this issue. *Stone*, 34 S.W.3d at 813.

ii. The Expected or Intended Injury Exclusion

The Expected or Intended Injury Exclusion provides that the Policy "does not apply to . . . '[b]odily injury . . . *expected* or intended from the standpoint of the insured." [DE 64-4 at 561 (emphasis added)].

"Kentucky law counsels that the Court apply three tests in determining whether an act falls into this type of policy exclusion:

> (1) It is necessary that the insured intend both the act as well as intending to cause bodily injury in order for the exclusion to apply.
>
> (2) Intent may be actual or inferred by the nature of the act and the accompanying reasonable foreseeability of harm.
>
> (3) Once it is found that harm was intended, it is immaterial that the actual harm caused is of a different character or magnitude than that intended."

13

*Ohio Farmers Ins. Co. v. Edwards*, CIVIL ACTION NO. 1:03CV-168-R, 2006 U.S. Dist. LEXIS 1190, at *3–4 (W.D. Ky. Jan. 13, 2006) (citing *Willis v. Hamilton Mut. Ins. Co.*, 614 S.W.2d 251, 252 (Ky. 1981)).

Gribbins's conviction for wanton murder estops him from arguing that the Expected or Intended Injury Exclusion does not apply. The conviction establishes that Gribbins acted wantonly, and "[o]ne can and should expect injury from wanton conduct." *Id.* at *6. Gribbins cannot therefore argue that he did not expect that his actions would harm Litsey, Jr. And because it is immaterial under the Expected or Intended Injury Exclusion whether Gribbins intended to kill Litsey, Jr., this incident is excluded from the Policy. *See id.* at *7 (holding that "[t]he finding of the criminal jury of intentional or wanton conduct which caused physical injury to another precludes relitigation of the issues involving [a] coverage exclusion" identical to the Expected or Intended Injury Exclusion) (citing *Parsley v. Ky. Farm Bureau Mut. Ins.*, 32 S.W.3d 103 (Ky. App. 2000)).

### iii. The Self-Defense Exception

The Expected or Intended Injury Exclusion contains an exception providing that the Expected or Intended Injury Exclusion does not apply to "bodily injury resulting from the use of reasonable force to protect persons or property" (the "Self-Defense Exception"). [DE 64-4 at 561]. Gribbins argues that there is a factual dispute about whether his conduct during the Incident constitutes "reasonable force to defend his person and lawful property (money) from his establishment" and that summary judgment is therefore inappropriate. [DE 78 at 679–80].

At Gribbins's trial, the court instructed the jury on self-protection, including that a defendant has "the right to use deadly physical force but only if he believed deadly physical force to be necessary to protect himself from death or serious physical injury." [DE 64-3 at 536]. The

jury's determination that Gribbins was guilty of wanton murder required a finding that Gribbins "was not privilege (sic) to act in self-protection." [*Id.* at 537]. Gribbins is therefore estopped from arguing that his use of force against Litsey, Jr. was a reasonable exercise of self-defense.

In Kentucky, "a defendant is justified in protecting property using *deadly* physical force only in defense of *a dwelling*." *Hartley v. Commonwealth*, No. 2009–SC–000640–MR, 2011 WL 2112393, at *4 (Ky. 2011) (emphasis in original) (citing KRS 503.080(2)). As the incident was unrelated to a dwelling, Gribbins is estopped from arguing that his use of force was a reasonable exercise of defense of his property.

Because Gribbins's use of force was neither a reasonable exercise of self-defense nor a reasonable exercise of defense of property, the Self-Defense Exception to the Expected or Intended Injury Exclusion does not apply. Thus, the Incident is excluded from the Policy.

       iv.   <u>The Assault And/Or Battery Exclusion</u>

The Assault And/Or Battery Exclusion provides that the Policy does not cover "'bodily injury' . . . resulting from, or caused in whole or in part by, assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation of any insured, his employees, patrons or any other persons." [DE 64–5 at 597].

The Kentucky jury found Gribbins guilty of wanton murder under KRS § 507.020(1)(b). [DE 64-3 at 537, 545]. "A person is guilty of murder when" . . . "under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." KRS § 507.020(1)(b). Because the Kentucky jury found that Gribbins had wantonly killed Litsey, Jr.'s and death is a form of physical injury that arose out of Gribbins's assault of Litsey, Jr., Gribbins is estopped from

15

arguing that he did not wantonly cause Litsey, Jr.'s physical injury. Gribbins's assault thus led to Litsey, Jr.'s death, excluding the Incident from the Policy.

## 2. Reasonable Expectation Doctrine and Equitable Estoppel.

According to Gribbins, "Insurance Agent Randi Clark" ("Agent Clark") made "verbal assurances" that "if any altercation[s] arouse [sic] at his establishment, because his business was a 'Bar' and those things happen, that [this] insurance policy would cover the cost of any lawsuit and damages thereafter." [DE 78 at 679 (alterations in original)]. Gribbins further states "he purchased this insurance policy with the reasonable assurances that he would be insured and covered [if] any event/occurrence, like the Defendant defending his business from robbery did happen." [*Id.* at 677 (alteration in original)]. Finally, Gribbins asserts that he "paid his monthly insurance payments in good faith expecting that he was covered for the exact events that occurred [in the Incident]." [*Id.* at 679].

Gribbins does not make clear in his Response how these assertions operate as premises in a legal argument. Maxum interprets Gribbins's statements as part of an argument that the Policy should be interpreted in conformity with the "reasonable expectation doctrine." [DE 79 at 693]. "The reasonable expectation doctrine is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms—e.g., when a policy is susceptible to two (2) or more reasonable interpretations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2002) (internal citations omitted). "Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations." *Id.* (internal quotation marks omitted).

Maxum is correct that "there is no basis to conclude that the [] Policy is ambiguous" and that the reasonable expectations doctrine is therefore inapplicable. [DE 79 at 694]. "A document

16

filed *pro se* is 'to be liberally construed,'" however, and a liberal construction of Gribbins's Response suggests that Gribbins intends to argue equitable estoppel, not the doctrine of reasonable expectations.[2] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"In Kentucky, an insurance company is liable 'when [an] agent acts within the scope of his authority, the insured reasonably relies upon that act, and the reliance constitutes the cause of the insured's damage.'" *Consol. Ins. Co. v. Slone*, 538 S.W.3d 922, 931 (Ky. App. 2018) (quoting *Pan-Am. Life Ins. Co. v. Roethke*, 30 S.W.3d 128, 132 (Ky. 2000)); *see also Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 712 (W.D. Ky. 2013). "Accordingly, in Kentucky, when an insurance agent makes affirmative misrepresentations about the coverage of an insurance policy, and the insured relies upon those misrepresentations to their detriment, an insurance company may be liable for the insured's injury." *Riney v. Mendenhall*, Civil Action No. 4:04CV-175-M, 2007 WL 2000005, at *1 (W.D. Ky. July 3, 2007) (citing *Roethke*, 30 S.W.3d at 133). "A misrepresentation claim requires "affirmative misrepresentations" and "not simply the failure to advise a potential insured" about exclusions. *Khazai Rug Gallery, LLC v. State Auto Prop. & Casualty Ins. Co.*, NO. 2016–CA–000129–MR, 2017 WL 945116, at *8 (Ky. Ct. App. Mar. 2017) (quoting *Roethke*, 30 W.S.3d at 133). Both Kentucky and federal courts consider equitable estoppel in the context of declaratory judgment actions. *See, e.g.*, *Century Sur. Co. v. Ken Bar, LLC*, No. 5:07–CV–70–R, 2009 WL 2602809, at *6 (W.D. Ky. Aug. 24, 2009); *Whittinghill v. Prudential Prop. And Cas. Co.*, No. Civ.A. 3:04CV-557, 2005 WL 3591989, at *2 n.2 (W.D. Ky. Dec. 29, 2005); *Slone*, 538 S.W.3d at 931.

---

[2] The phrase "reasonable expectations" does not appear in Gribbins's Response (although it does appear in his initial Answer to the Complaint). [DE 8; DE 78].

Maxum argues that it is not bound by Agent Clark's statements because Gribbins's assertions about Agent Clark's assurances are "unsupported" and therefore incapable of creating a genuine issue of material fact. [DE 79 at 694].

28 U.S.C.A. § 1746 permits a document signed and dated under penalty of perjury to be used instead of a sworn declaration or affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment.")(citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Assertions made in a Response signed and dated under penalty of perjury can therefore create genuine issues of material fact sufficient to defeat a motion for summary judgment. *See McCormick v. Henderson Cty. Det. Ctr.*, CIVIL ACTION NO: 4:16-CV-00017-JHM, 2019 WL 366860, at *8 (W.D. Ky. Jan. 30, 2019).

Gribbins signed his Response "under the penalty of perjury" and dated the Response. [DE 78 at 681]. The Court must therefore consider the assertions contained in it as true for summary judgement and determine whether Gribbins has established a disputed issue of material fact as to each of the elements of equitable estoppel. The parties, however, did not brief equitable estoppel on summary judgment and there is not enough information in the record for the Court to decide this issue. As a result, the Court will deny summary judgment on the issue of equitable estoppel and permit limited supplemental briefing on this remaining issue.

  **3.**  **Whether the Broken Spoke is an Insured.**

Maxum also moves for summary judgment as to its duty to defend or indemnify Broken Spoke, because Broken Spoke is not an insured under the Policy.

The title page of the Policy reads "Insurance Policy for: Chris Gribbins DBA Raywick Bar & Grill. [DE 64-4 at 550]. The Common Policy Declarations page lists as the only named insured

"Chris Gribbins DBA Raywick Bar & Grill." [*Id.* at 552]. The Policy makes clear that within the Policy, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under the policy." [*Id.* at 560]. Section II of the Policy, entitled "Who is an Insured," contains a description of those entities that, in addition to the named insureds, are considered insureds under the Policy—for example, the spouse of a named insured. [*Id.* at 568–69]. That section reads, in part, "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." [*Id.* at 569]. The phrase "Broken Spoke LLC" does not appear within the Policy.

The Policy is clear that limited liability companies are not insureds under the policy unless they are named insureds. Broken Spoke is not listed as a named insured and is therefore not an insured under the Policy. Broken Spoke is therefore not entitled to any benefits under the Policy and summary judgment against Broken Spoke is appropriate. *See, e.g.*, *Hettler v. State Farm Mut. Auto. Ins. Co.*, NO. 2015–CA–001207–MR, 2017 WL 729738, at *3 (Ky. Ct. App. Feb. 24, 2017).

## V. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** Plaintiff Maxum Indemnity Company's Motion for Summary Judgment, [DE 62], is **GRANTED IN PART and DENIED IN PART** consistent with this Order.